U.S. BANKRUPTCY COURT
District of South Carolina

Case Number: 05-07975

ORDER

The relief set forth on the following pages, for a total of 18 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**07/30/2009**



_____
US Bankruptcy Court Judge
District of South Carolina

Entered: 07/30/2009

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE:<br><br>James A. Houston,<br><br>Debtor(s). | C/A No. 05-07975-DD<br><br>Chapter 7<br><br>**ORDER** |

THIS MATTER is before the Court pursuant to the Consent Order Authorizing the Sale of Real Property and Escrowing One-Half of the Proceeds From the Sale of Real Property ("Consent Order") between Robert F. Anderson ("Trustee") and EMC Mortgage Corporation ("EMC"). The remaining issues between Trustee and EMC are questions of law and the parties agreed to submit briefs to the Court arguing their respective positions. Pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. of Bankr. P. 9014 and 7052[1], the Court makes the following findings of fact and conclusions of law.

*FINDINGS OF FACT*

James A. Houston ("Debtor") and his wife, Penny, bought a home on Cameron Road in Calhoun County, South Carolina for $115,000 on November 22, 2004. The purchase was made with $26,793.63 in proceeds from Debtor's pension plan and a loan from Home Source Mortgage Corporation ("Home Source") of $92,000. The loan was secured by a mortgage on the property. The property was titled in Mrs. Houston alone.

Mrs. Houston later borrowed $98,950 from RBC Mortgage Company ("RBC") to refinance the Home Source loan. Mortgage Electronic Registration Systems, Inc. ("MERS") is the nominee of RBC and is the mortgagee on the instrument securing the RBC loan. The mortgage was recorded in the Richland County RMC Office on June 9, 2005. It should have been recorded in Calhoun County. RBC's interest in the loan was

---

[1] Further reference to the Federal Rules of Bankruptcy Procedure will be by rule number only.

1

transferred to CitiBank, the current beneficial holder of the loan. The loan is serviced by EMC. The Home Source mortgage was satisfied of record in Calhoun County on June 6, 2005.

Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on July 14, 2005. He did not list the Cameron Road property as an asset in his schedules nor did he report the use of the pension funds in connection with the property purchase. Debtor did, however, claim an unspecified "pension payment" as exempt property. Following the meeting of creditors Trustee objected to the exemption of the pension payment on the ground that a debtor cannot exempt property not owned and/or not disclosed.

Debtor moved to convert his case to one under chapter 13, which motion was granted on September 20, 2005. Subsequently the case was converted to chapter 7 on motion of the chapter 13 trustee by order entered May 25, 2006. Anderson again entered into service as chapter 7 trustee and renewed his objection to exemption of the pension payment. Debtor and his wife were examined by Trustee pursuant to Rule 2004 on August 9, 2006. An order was entered denying the exemption on September 14, 2006 and Debtor's discharge was denied February 21, 2007 in connection with, among other things, the failure to disclose the use of the pension funds to purchase the Cameron Road property[2].

During the Rule 2004 examinations of Debtor and Mrs. Houston, testimony was elicited to the effect that Debtor contributed $26,793.63 from his pension plan to the purchase of the Cameron Road property, that Debtor and Mrs. Houston considered

---

[2] Adversary Proceeding No. 06-80227.

2

Debtor the owner of a one-half interest in the Cameron Road property, and that Mrs. Houston was making monthly mortgage payments on the property. Trustee initiated an adversary proceeding against Mrs. Houston to recover the transfer by Debtor of the pension funds and for a determination that Debtor jointly owned the Cameron Road property with his wife. Mrs. Houston defaulted and judgment that Debtor was owner of a one-half undivided interest in the property was entered for Trustee on July 11, 2007[3]. A copy of this order was recorded in Calhoun County on August 8, 2007.

Next, Trustee sued[4] Mrs. Houston, Home Source, and EMC seeking authority to sell both the estate's interest and the co-owner's interest of Mrs. Houston pursuant to 11 U.S.C. § 363(h)[5] and for a determination that the satisfied mortgage of Home Source and any assignment of the mortgage to EMC were void as to Trustee pursuant to § 544(a)(3). Mrs. Houston and Home Source defaulted and Trustee was awarded relief on March 12, 2008. EMC answered the complaint. EMC and Trustee then stipulated to the dismissal of the action without prejudice on May 12, 2008. The mortgage serviced by EMC was finally recorded in Calhoun County on October 27, 2008.

On February 19, 2009 Trustee gave notice of intention to sell the Cameron Road property to a third party, free and clear of liens and free and clear of Mrs. Houston's interest, for $120,000. EMC objected to the sale. At the hearing on the objection Trustee and EMC proposed a consent order authorizing the sale, providing for payment of the expenses of sale and one-half of the amount due EMC in recognition of the lien against

---

[3] Adversary Proceeding No. 07-80073.

[4] Adversary Proceeding No. 08-80009. The complaint was filed January 23, 2008 and EMC was added as a party by amended complaint filed February 5, 2008.

[5] Further reference to the Bankruptcy Code, 11 U.S.C. § 101 *et. seq.*, will be by section number only.

3

Mrs. Houston's interest in the property, and reserving the issue of entitlement to the remaining proceeds. The Court adopted the consent order and the parties stipulated to the facts (which have been supplemented from the record in the bankruptcy case and adversary proceedings for clarity) and agreed to the submission of the legal issues on briefs.

The sale has taken place and Trustee has filed his report of sale. Trustee holds $54,296.35.

## *CONCLUSIONS OF LAW*

Trustee contends that EMC's improperly recorded mortgage is not enforceable against a trustee in bankruptcy. A bankruptcy trustee has the rights and powers of a bona fide purchaser of real property from the Debtor at the time of the commencement of the case pursuant to § 544(a)(3)[6]. A trustee may avoid any transfer, here the fixing of EMC's lien, that contravenes the bona fide purchaser status. EMC argues that it is entitled to the proceeds from the sale of the Cameron Road property pursuant to the doctrine of equitable subrogation. EMC contends that through equitable subrogation to the Home Source mortgage it should be awarded the remaining proceeds from the sale of the Cameron Road property. In the alternative, EMC argues that allowing the Trustee to retain the proceeds from the sale of the Cameron Road property will unjustly enrich Trustee and that it should therefore have an equitable lien in the proceeds.

---

[6] Section 544(a)(3) provides:
   a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of the debtor or any obligation incurred by the debtor that is voidable by—
      3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

4

I

Pursuant to § 544(a)(3) of the Bankruptcy Code, a trustee in bankruptcy may avoid any obligation incurred by the debtor that is voidable by a hypothetical bona fide purchaser of real property under state law. The trustee's "strong arm powers" pursuant to § 544 serve the purpose of cutting off unperfected security interests and secret liens. 5 *Collier on Bankruptcy* ¶ 544.03 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2008). Trustee's status as a bona fide purchaser arises from the Bankruptcy Code, federal law, yet the effect of the status depends on state law. *See Midlantic Nat'l Bank v. Bridge (In re Bridge)*, 18 F.3d 195, 200 (3d Cir. 1994) (holding that while federal law defines a trustee's avoidance powers, state law governs the determination of property rights). A trustee's strong-arm powers confer on the trustee no greater rights than those accorded by the applicable state law in legal or equitable proceedings. *Havee v. Belk*, 775 F.2d 1209, 1218-19 (4th Cir. 1985).

Under South Carolina law, a purchaser is a bona fide purchaser for value, without notice of defect in his title when (1) he has actually paid in full the purchase money (giving security for the payment is not sufficient, nor is past indebtedness a sufficient consideration); (2) he purchased and acquired legal title, or the best right to it; and (3) he purchased bona fide, i.e., in good faith and with integrity of dealing, without notice of a lien or defect. *Spence v. Spence*, 628 S.E.2d 869, 874-75 (S.C. 2006). While state law requires these elements to establish bona fide purchaser status, the status is conferred on a bankruptcy trustee on the date of the commencement of the bankruptcy case. Recording acts dating back to colonial days protect innocent or bona fide purchasers of real property, who pay valuable consideration, from the claims of creditors or lienholders

5

whose claims were not on record at the time of conveyance to the bona fide purchaser. *Id.* at 876. Federal bankruptcy law implements this same policy.

While state law tests a purchaser's bona fides by examining his actual knowledge, bankruptcy law renders a trustee's actual knowledge of a lien or defect irrelevant by virtue of the provisions of § 544(a)(3). The trustee does however have constructive notice of transfers perfected in accord with state or federal recordation acts. *See In re Michigan Lithographing Co.*, 997 F.2d 1158, 1159 (6th Cir. 1993). Constructive notice is measured on commencement of the case; just as the avoidance power itself springs from commencement of the case. Any knowledge, constructive or actual, that might be imputed from the schedules or statements or from examination of the debtor and other parties can only come after the commencement of the case and is of no avail to defeat the trustee's status. *See In re Deuel*, 361 B.R. 509, 511 (B.A.P. 9th Cir. 2006).

Under South Carolina law the importance of properly perfecting and giving public notice of one's claim is quite significant. Subsequent purchasers are entitled to rely on recorded deeds and plats to determine their rights in respect to property. *Murrells Inlet Corp. v. Ward*, 662 S.E.2d 452 (S.C. App. 2008). A mortgage recorded out of time is held to take effect in respect to priority only from the date it was properly recorded. *In re Syleecau Mfg. Co.*, 17 F.2d 503 (D.S.C. 1922) (a Bankruptcy Act case reviewing South Carolina's recording acts to that date). A mortgagee is not entitled to share with subsequent creditors who acquired rights by mortgagee's failure to record a mortgage. *Simmons v. Greer*, 174 F. 654 (4th Cir. 1909). This application applies to subsequent purchasers as well. These state law rules as to recordation of instruments have long been

6

applied in bankruptcy courts. *Industrial Finance Corp. v. Capplemann*, 284 F. 8 (4th Cir. 1922).

In this case, Trustee is a bona fide purchaser of real property, with all the rights accorded under the laws of South Carolina unless he has constructive notice of the EMC lien. The Trustee did not have constructive notice of EMC's lien because at the time of commencement of the bankruptcy case, the records in Calhoun County contained only a deed to Mrs. Houston and a satisfied Home Source mortgage. A bona fide purchaser of the Cameron Road Property on the date of commencement of the bankruptcy case, and thus the Trustee, would receive the property free of EMC's lien. Information obtained by the Trustee subsequent to commencement of the case, at the Rule 2004 examinations or in Debtor's schedules, is irrelevant to the Trustee's status as a bona fide purchaser of the real property.

While the Trustee is a bona fide purchaser, the fact that Debtor never held title to the Cameron Road property pre-petition is initially troubling, especially as here where an equity analysis is employed. The Trustee's rights spring not simply as the bona fide purchaser of the property but as the "bona fide purchaser of real property … from the debtor…." § 544(a)(3). It is clear however that Trustee acquired whatever interest the Debtor possessed on the date of filing, including equitable interests. See § 541(a)(1). This interest transformed into legal title by virtue of Mrs. Houston's default in the adversary proceeding. This, in and of itself, is, of course, not binding on non-parties to the litigation against Mrs. Houston.

The Bankruptcy Code, however, contemplates that a trustee in bankruptcy can use § 544(a) even against interests in property in which the debtor actually has no rights

7

when the petition is filed.  2 David G. Epstein, Steve H. Nickles, James J. White, *Bankruptcy: Practitioner Treatise Series* § 6-61, 116 (1992).  Section 544 specifically permits avoiding prepetition transfers of a debtor's property; avoidance of such a transfer is possible through the Bankruptcy Code even when the transfer leaves the debtor without any rights to the property at the time of bankruptcy.  *Id.*  The essential inquiry is whether, notwithstanding the transfer, a subsequent lien creditor or purchaser claiming through the debtor would, under local law, acquire rights to the property superior to the interest of the prior transferee.  *Id.* at 116-17.  "[C]onceding that the property rights of the estate are derivative from the property rights of the debtor, still the trustee enjoys additional powers quite independent of his powers under Section 541, and in no way derivative from the debtor's rights at state law."  *Granada, Inc. v. Cinnamon Ridge, Ltd.*, 92 B.R. 501, 510-11 (Bankr. D. Utah 1988) (quoting *In re Great Plains Western Ranch Co.*, 38 B.R. 899, 904-05 (Bankr. C.D. Cal. 1984)).  Section 544(a) creates a legal fiction of a transfer from the debtor to a bona fide purchaser on the date of filing, thereby clothing the trustee in whatever legal rights a bona fide purchaser would possess.  *Geygan v. World Savings Bank (In re Nolan)*, 383 B.R. 391, 397 (6th Cir. B.A.P. 2008).  Because the estate obtained title to a one-half interest in the Cameron Road Property before the long delayed recording of the EMC mortgage, the fact that Debtor did not hold record title is less bothersome in the equitable analysis.  Further, the transfer at issue is not only the transfer of the encumbrance to EMC's predecessor but also the transfer of property to Mrs. Houston (the pension fund) and the failure to take title to the real property by Debtor.  From this the bankruptcy estate's interest springs.

8

The bankruptcy estate's interest in the real property is not subject to the improperly recorded EMC mortgage unless South Carolina law provides relief.

II

EMC seeks to be subrogated to the Home Source mortgage. Under South Carolina law, subrogation arises by statute, by contract, or in equity. *See Kuznik v. Bees Ferry Associates*, 538 S.E.2d 15, 30 (S.C. Ct. App. 2000). "Subrogation may be broadly defined as the substitution of one person in the place of another with reference to a lawful claim or right." *Id.* Equitable subrogation is of an implied nature and arises under the common law. This is in contrast to the statutory subrogation found in § 509 of the Bankruptcy Code[7].

Trustee argues that only subrogation pursuant to § 509 is available in bankruptcy proceedings. The Trustee asserts that given the codification of subrogation in § 509, equitable subrogation under state law is preempted. *See Cooper v. Cooper (In re Cooper)*, 83 B.R. 544, 546 (Bankr. C.D. Ill. 1988). This Court disagrees. The majority and better rule is that both subrogation under § 509 and equitable subrogation under state law are available in bankruptcy proceedings. *See McAllister Towing v. Ambassador*

---

[7] Section 509 provides:
  (a) Except as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor on, or has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.
  (b) Such entity is not subrogated to the rights of such creditor to the extent that—
    (1) a claim of such entity for reimbursement or contribution on account of such payment of such creditor's claim is—
      (A)   allowed under section 502 of this title;
      (B)   disallowed other than under section 502(e) of this title; or
            subordinated under section 510 of this title; or
    (2) as between the debtor and such entity, such entity received the consideration for the claim held by such creditor.
  c) The court shall subordinate to the claim of a creditor and for the benefit of such creditor an allowed claim, by way of subrogation under this section, or for reimbursement or contribution, of an entity that is liable with the debtor on, or that has secured, such creditor's claim, until such creditor's claim is paid in full, either through payments under title or otherwise.

9

*Factors (In re Topgallant Lines, Inc.)*, 154 B.R. 368, 382 (S.D. Ga. 1993), *aff'd*, 20 F.3d 1175 (11th Cir. 1994) (stating that § 509 does not exist in a vacuum). That the Bankruptcy Code codifies one type of subrogation should not stand as a bar to subrogation in other contexts, absent a clear congressional intent. This is especially so in an area, such as property law, traditionally occupied by states. *See Altria Group, Inc. v. Good*, 129 S. Ct. 538, 543 (2008) (holding that the Federal Cigarette Labeling and Advertising Act did not preempt a state law fraud claim).

Equitable subrogation is properly an available remedy in the bankruptcy courts[8]. The general availability of the state law doctrine does not end the inquiry. To prevail EMC must meet each of the requirements for equitable subrogation.

The doctrine of equitable subrogation is "founded not upon any fixed law, but upon principles of natural justice; its purpose is to require the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it; and it is to be applied according to the dictates of equity and good conscience in light of the actions and relationship of the parties." *Calvert Fire Ins. Co. v. James*, 114 S.E.2d 832, 834 (S.C. 1960). Under South Carolina Law, equitable subrogation is appropriate where the following factors are present: (1) the party claiming subrogation has paid the debt; (2) the party was not a volunteer but had a direct interest in the discharge of the debt or lien; (3) the party was secondarily liable for the debt or for the discharge of the lien; and (4) no

---

[8] *See Also* Bruce H. White and William L. Medford, *Equitable Subrogation: The Saving Grace for Unperfected Lenders?*, 24-AUG Am. Bankr. Inst. J. 38 (2005); Lisa Bittle Tancredi and Marc E. Shach, *The Equitable Subrogee vs. the Bankrtupcy Trustee: New Uses For An Old Doctrine*, 16 FEB Am. Bankr. Inst. J. 22 (1997).

injustice will be done to the other party by the allowance of the equity[9]. *United Carolina Bank v. Caroprop, Ltd.*, 446 S.E. 2d 415, 416 (S.C. 1994).

Trustee contends that it would not be equitable to allow EMC to defeat his interest because a trustee in bankruptcy stands as a bona fide purchaser and as a subsequent judgment creditor pursuant to § 544. Trustee further argues that allowing equitable subrogation against a trustee in bankruptcy would undermine the priority system of the Bankruptcy Code. Trustee correctly contends that no South Carolina case on equitable subrogation has considered the doctrine with respect to the rights and duties of a bankruptcy trustee. Because the relationship of the parties is relevant in the *Calvert Fire* analysis, these contentions are deserving of weight in this Court's equity analysis. This, however, does not end the inquiry. While federal law defines a trustee's avoidance powers, state law governs the determination of property rights. *See Midlantic Nat'l Bank v. Bridge (In re Bridge)*, 18 F.3d 195, 200 (3d Cir. 1994). The trustee's strong-arm powers confer no greater rights than those accorded by the applicable state law to a creditor holding a lien by legal or equitable proceedings. *Havee v. Belk*, 775 F.2d at 1218-19. This principle would apply as well to a bona fide purchaser. The door is not closed to a putative subrogee upon encounter with a bankruptcy trustee, however the elements of the state law remedy must be met by the party requesting subrogation and the relationship of the party requesting subrogation and the estate's representative, the trustee, are all relevant.

---

[9] Some courts include an additional factor in the analysis of equitable subrogation. *See In re Photo Mechanical Services, Inc.*, 179 B.R. 604, 618 (Finding equitable subrogation appropriate when the following factors are present: (1) the payment must have been made by the subrogee to protect his own interest; (2) the subrogee must not have acted as a volunteer; (3) the debt paid must be one for which the subrogee was not primarily liable; (4) the entire debt must have been paid; and (5) subrogation must not work any injustice to the rights of others).

11

EMC argues that it is entitled to be equitably subrogated to the first lien position of Home Source because all of the requisite factors of the doctrine have been met. No party questions the initial validity of Home Source's now satisfied lien against the Cameron Road property. EMC, by its predecessor RBC, paid the Home Source debt. RBC intended to take a first lien on the real estate by paying the Home Source debt and recording a new lien. RBC was not a mere volunteer but had a legal obligation to satisfy the first mortgage under the loan documents executed by Mrs. Houston. Under South Carolina law where a subsequent mortgagee is obligated to satisfy a first mortgage, and the mortgage note recites it is to become a first mortgage, there is a legal obligation to discharge the debt. *See Pee Dee State Bank v. Prosser*, 367 S.E.2d 708 (S.C. Ct. App. 1988), *overruled in part on other grounds by United Carolina Bank v. Caroprop, Ltd.*, 446 S.E.2d 415 (S.C. 1994).

EMC attempts to step into the Home Source mortgage which was satisfied of record in Calhoun County on June 6, 2005. A satisfied mortgage is not revived under South Carolina law absent misleading conduct by the property owner, mistake of the mortgage holder, or ignorance of the existence of a subsequent mortgage. *Dedes v. Strickland*, 414 S.E.2d 134, 137 (S.C. 1992). In this case, there is no allegation that Home Source was misled into filing the mortgage satisfaction on the Cameron Road property, indeed evidence indicates that the satisfaction was properly filed. By the time EMC perfected its lien on the Cameron Road property, on October 27, 2008, it was fully aware of the Trustee's superseding interest. Should subrogation be allowed, EMC's

12

position with respect to the Cameron Road Property is unsecured on account of the satisfaction filed by Home Source[10].

The gravamen of the dispute is whether injustice would be done in subrogating EMC to Home Source over the claims of an intervening bona fide purchaser. Trustee had no notice of the EMC mortgage which had been recorded in Richland County or the Home Source mortgage which had been satisfied of record in June, 2005. The South Carolina Recording Act, South Carolina Code § 30-7-10[11], provides that in order to be valid against a bona fide purchaser, deeds and mortgages must be recorded in the county where the property is located. The EMC mortgage was not so recorded and the Home Source mortgage is satisfied.

Subrogation has been allowed in South Carolina cases only upon fact intensive inquiry and a balancing of equity. Only a handful of the equitable subrogation cases deal with mortgages and judgments and none discuss the doctrine in connection with the rights of a bona fide purchaser of real property. The relevant South Carolina cases allow subrogation cutting off the rights of other creditors, never a bona fide purchaser; and in the case of creditors only when the original expectation and priority of the

---

[10] Comment d to § 42 of the Restatement (Third) of Suretyship and Guaranty makes this clear:
> If the obligee releases its security interest in collateral securing the underlying obligation, it has obviously diminished the ability to recover with respect to that obligation. The subrogated secondary obligor is similarly harmed by the release.

Restatement (Third) of Suretyship & Guar. § 42 cmt. d (1996).

[11] S.C. Code Ann § 30-7-10 provides:
**Conveyances, liens and other transactions valid as to subsequent purchasers and creditors without notice when recorded.**
All deeds of conveyance of lands, tenements, or hereditaments, either in fee simple or for life, all deeds of trust or instruments in writing conveying estate, creating a trust in regard to the property, or charging or encumbering it, all mortgages or instruments in writing in the nature of a mortgage or any real property, . . . or other liens on real property created by law or by agreement of the parties . . . except as otherwise provided by statute, are valid so as to affect the rights of subsequent creditors (whether lien creditors or simple contract creditors), or purchasers for valuable consideration without notice, only from the day and hour when they are recorded in the office of the register of deeds or clerk of court of the county in which the real property affected is situated.

13

creditor vis-à-vis the collateral is not changed by allowing equitable subrogation. *See Kuznik v. Bees Ferry Assoc.*, 538 S.E.2d 15 (S.C. App. 2000) (reversing the decision of a Master-in-Equity granting reimbursement under the doctrine of equitable subrogation when the underlying obligation was a nonrecourse note); *Dodge City of Spartanburg, Inc. v. Jones*, 454 S.E.2d 918 (S.C. App. 1995) (finding equitable subrogation appropriate when creditor's original expectations are preserved); *United Carolina Bank v. Caroprop, Ltd.*, 446 S.E.2d 415 (S.C. 1994) (finding that no injustice is imposed in allowing equitable subrogation when creditor's original expectations are preserved); *Dedes v. Strickland*, 414 S.E.2d 134 (S.C. 1992) (finding that a creditor is not entitled to equitable subrogation where they were not mislead as to the existence of a subsequent mortgage). *See also First Carolinas Joint Stock Land Bank of Columbia v. DuBose*, 186 S.E. 514 (S.C. 1936); *South Carolina Ins. Co. v. Kohn*, 95 S.E. 65 (S.C. 1918).

In applying the facts and law in this case to the principles espoused in the South Carolina cases, the equities in this case lie in favor of the Trustee. EMC, the holder of an improperly recorded mortgage, was in the best position to protect itself. It failed to do so. Equity does not favor a negligent party. *See Equicredit Corp. v. Simms (In re Simms)*, 300 B.R. 877, 879 (Bankr. S.D. W. Va. 2003) (citing Ohio state law for the proposition that equitable subrogation will not benefit parties who are negligent in their business transactions and could have protected themselves). General South Carolina law is in accord. Equity rewards the diligent, not those who sleep on their rights. *Hemingway v. Mention*, 89 S.E.2d 369, 371 (S.C. 1955).

The equities balance in favor of Trustee largely because of his status as a hypothetical bona fide purchaser without knowledge. In contrast, EMC's predecessor

14

failed to record its lien and the failure continued for more than three years. The failure continued even after Trustee commenced litigation on behalf of the estate to sell the property free and clear of the EMC lien and expressed the belief that EMC claimed, if at all, only by virtue of an assigned but satisfied debt. This litigation, to which EMC was a party, preceeded the actual, belated recording of the mortgage by eight months. Subrogation should not be permitted against a bona fide purchaser without knowledge under these circumstances.

### III

EMC also argues that it should have an equitable lien on the real estate and in the proceeds of the sale. An equitable lien is simply a right of a special nature over a thing, which constitutes a charge or encumbrance upon it, so that the very thing itself may be proceeded against in equity for payment of a claim or debt. *First Fed. Sav. & Loan Ass'n v. Bailey*, 450 S.E.2d 77, 80 (S.C. Ct. App. 1994). For an equitable lien to arise there must be a debt owing from one person to another, specific property to which the debt attaches, and intent, expressed or implied, that the property will serve as security for the payment of the debt. *Id.* at 80-81. Although not judicially recognized until a judgment is entered declaring its existence, an equitable lien relates back to the time it was created by the conduct of the parties. *Id.* at 81.

EMC argues that it is entitled to an equitable lien on and against the Cameron Road property because there is a debt owed by Mrs. Houston which attaches to the specific property, and an expressed and implied intent that the Cameron Road property serve as security for payment of that debt. Again, EMC's interest must yield to Trustee's status as a bona fide purchaser of real property.

15

A trustee in bankruptcy may only defeat an adverse party's equitable interest in property if, under state law, a bona fide purchaser of debtor's interest in subject property would prevail over the adverse party at the date of filing. *See In re Dlott*, 43 B.R. 789 (Bankr. D. Mass. 1983). It is well established under South Carolina law that an equitable lien may not be enforced against a bona fide purchaser of real property nor, subsequent to 1843, against even the holder of a prior judgment. *See Boyce v. Shiver*, 3 S.C. 515 (S.C. 1872). For this reason, EMC's demand for an equitable lien fails.

IV

EMC argues that allowing Trustee to retain the sale proceeds from the Cameron Road Property causes unjust enrichment. It does not. The Debtor's equitable interest in the Cameron Road property came into the estate under § 541(a)(1) of the Bankruptcy Code as of the petition date. EMC's unperfected interest in the Cameron Road property is avoidable by the Trustee pursuant to his strong-arm powers under § 544(a) of the Bankruptcy Code. The avoided interest is preserved for the benefit of the bankruptcy estate under § 541(a)(3). Trustee has duties to all creditors. Unlike the parties to a two party dispute, a trustee in bankruptcy has no interest beyond the preservation of the estate for creditors. Allowing the bankruptcy estate to retain the sale proceeds from the Cameron Road property does not cause unjust enrichment, rather it furthers the Congressional policy of a ratable distribution to all similarly situated creditors.

## *CONCLUSION*

Trustee is a bona fide purchaser of the bankruptcy estate's interest in the Cameron Road property. Neither EMC's equitable subrogation nor equitable lien claims defeat Trustee's superior interest.

IT IS THEREFORE ORDERED that the proceeds being held by the Trustee are not subject to a lien in favor of EMC. Trustee shall proceed with the administration of this case and disburse the funds as provided by the Bankruptcy Code.

**AND IT IS SO ORDERED.**